IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CODY DEAN HAGLER,<br>BOP Prisoner No. 08557-003,<br>    Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>    Respondent. | )<br>)<br>)<br>) CIVIL ACTION NO. 1:22-00303-TFM-N<br>)<br>)<br>) CRIMINAL NO. 1:08-00215-TFM-N-1<br>)<br>)<br>) |

## **REPORT AND RECOMMENDATIONS**

Cody Dean Hagler, a federal prisoner proceeding without counsel (pro se), filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 220)[1] challenging the Court's judgment revoking supervised release (Doc. 145) in the above-style criminal action. (Doc. 220, PageID.1065). Hagler certifies delivery of his petition for mailing[2] on July 12, 2022.[3] (Doc. 225, PageID.1114). Hagler's motion was referred to the undersigned Magistrate Judge for appropriate action pursuant to S.D. Ala. GenLR 72(b). (8/3/2022 electronic reference).[4]

---

[1] All "Doc." citations herein refer to the docket of the above-noted criminal action.

[2] In this circuit, "[A] prisoner's pro se § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing." *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).

[3] Hagler originally certified placement of his § 2255 motion in the prison mailing system on July 2, 2022. (Doc. 220, PageID.1078). Subsequently, Hagler asserts he filed the motion on July 12, 2022, explaining, "he left the 1 out of the date." (Doc. 225, PageID.1114). Taken at face value and liberally construed in favor of the pro se petitioner, the undersigned deems Hagler's motion as filed on July 12, 2022. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) (citation omitted) (noting "less stringent standard" for pro se pleadings).

[4] Under S.D. Ala. GenLR 72(a)(2)(R), the undersigned is authorized to require responses, issue orders to show cause and any other orders necessary to develop a complete record, and to prepare a report

Upon review of Hagler's motion (Doc. 220), the record of proceedings, and responses to the Court's show-cause order (Docs. 221, 225, 226, 227), the undersigned finds Hagler is neither entitled to equitable tolling nor relief on the underlying § 2255 motion because his claims are time-barred from consideration on collateral review.

## I.    *Procedural Background*

On June 2, 2009, the Court entered a judgment of conviction against Hagler for violating 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine). (Doc. 40). Hagler was sentenced to a prison term of 120 months with eight years of supervised release. (*Id*.). His sentence was subsequently reduced by the Court on two occasions: first, to 102 months following a substantial assistance motion filed by the United States, (*see* Docs. 52, 55), and second, to 82 months pursuant to 18 U.S.C. § 3582(c)(2) without modification to the terms of supervised release imposed. (Doc. 66).

Since Hagler's initial release from custody, his term of supervision has been revoked on three separate occasions due to violations of the conditions imposed. First, in January 2017, which resulted in a sentence of eight months imprisonment with 52 months of supervised release. (Doc. 81). Second, in November 2018, which resulted in a sentence of ten months imprisonment with 36 months of supervised release. (Doc. 111). And third, in November 2019, which resulted in a sentence of 60 months imprisonment and a recommendation to Bureau of Prisons that the term be served at an institution offering substance abuse and mental health counseling programs.

---

and recommendation to the District Judge as to appropriate disposition of these proceedings brought under § 2255, in accordance with 28 U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

(Doc. 145). Hagler appealed (Doc. 146), and the Eleventh Circuit affirmed the Court's judgment on July 14, 2020. (Doc. 184). The record reflects no attempt by Hagler to file a petition for writ of certiorari with the Supreme Court of the United States.

Hagler certifies placement of his § 2255 motion in the prison mailing system on July 12, 2022.[5] (Doc. 225, PageID.1114). In the timeliness section, Hagler states, "the year is not over but it is close." (Doc. 220, PageID.1076). However, upon preliminary review of the motion pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the undersigned found Hagler's § 2255 motion to be plainly time-barred, explaining:

> There is no basis apparent in the record for applying the §§ 2255(f)(2), (3), and (4) trigger dates to any of Hagler's claims, and all claims raised in his motion are plainly untimely under § 2255(f)(1). Hagler's judgment of conviction became final on October 13, 2020, the date that his deadline to file a petition for a writ of certiorari with the Supreme Court of the United States expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding in the context of postconviction relief, "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). Thus, Hagler had until October 13, 2021, to file a § 2255 motion collaterally attacking his judgment of conviction.

(Doc. 221, PageID.1082-83) (footnote omitted). On August 8, 2022, the Court directed Hagler to show cause as to why his action should not be dismissed as time-barred and provided both the movant and the government with an opportunity to be heard on the issue pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. (Doc. 221, PageID.1085-87). The undersigned set a deadline of September 8, 2022, for the parties to file any responses, briefing or

---

[5] *See* n.3.

supporting materials. (Doc. 221, PageID.1087). Hagler timely responded to the Court's show-cause order on August 25, 2022, (Doc. 225), and the Government filed a timely response on September 8, 2022. (Doc. 226).

After the September 8, 2022, deadline imposed by the Court's show-cause order, Hagler submitted a reply to the Government's response on September 19, 2022.[6] (Doc. 227). The Court's order contained no provision setting a deadline for a potential reply brief nor any language indicating late filings would not be considered. (*See* Doc. 221). Though Hagler has not sought nor obtained any extension relating to this filing, in light of his pro se status, the Court will consider this reply as if it were timely filed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting need for liberal construction of pro se filings); Fed. R. Civ. P. 8(e) ("All pleadings shall be so construed as to do substantial justice.").

## II.     *Legal Standard*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a one-year statute of limitations for filing a § 2255 motion." *Outler v. United States*, 485 F.3d 1273, 1278 (11th Cir. 2007) (per curiam). The limitations period begins to run from the latest of four possible triggering dates:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively

---

[6] Hagler's reply does not certify a delivery date to prison officials for mailing. *See Washington,* 243 F.3d at 1301. However, the envelope is dated September 19, 2022, which the Court will view as the operative date of delivery to prison officials for filing purposes. (Doc. 227, PageID.1136).

4

applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "The § 2255(f) statute of limitations requires a claim-by-claim approach to determine timeliness." *Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017) (quotation omitted).

Despite AEDPA's one-year rule, a district court may review a § 2255 motion filed outside the statute of limitations if the movant demonstrates entitlement to equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). "Tolling means just what it says – the clock is stopped while tolling is in effect." *Knight v. Schofield*, 292 F.3d 709, 712 (11th Cir. 2002). Though tolling is "an extraordinary remedy … permitted by federal courts only sparingly," it may be "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Jones v. United States*, 304 F.3d 1035, 1038-40 (11th Cir. 2002) (citations and quotations omitted). *See San Martin*, 633 F.3d at 1267 (noting requirement of casual connection). Put differently, to be entitled to equitable tolling, a movant must demonstrate that "extraordinary circumstances have worked to prevent an otherwise diligent petitioner from timely filing his petition." *Dodd v. United States,* 365 F.3d 1273, 1283 (11th Cir. 2004) (citations and internal quotations omitted).

### III. *Analysis*

**a. Equitable Tolling**

To demonstrate entitlement to equitable tolling, Hagler must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *San Martin*, 633 F.3d at 1267 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Hagler argues, in sum, that he is entitled to equitable tolling and points to several circumstances which he asserts prevented the timely filing of his § 2255 motion by the AEDPA-imposed October 13, 2021, deadline. The Court will address them in turn.

1. *Delay Due to Pending Appeals*

Hagler first asserts he could not file his § 2255 motion until his appeals[7] were over because the district court lacks jurisdiction to review such a motion during the pendency of an appeal. (Doc. 225, PageID.1111-12). Hagler is correct as to his general proposition of the law. *See Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003) ("the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal" (citations omitted)). However, the record does not support his position. As the Government points out, Hagler's appeals on separate – albeit, related – motions were finalized on March 3, 2021 (Doc. 206), and May 20, 2021 (Doc. 209),

---

[7] Though Hagler has launched several appeals over the life cycle of his case, only two are relevant to his argument for tolling: First, the appeal of the Court's denial of Hagler's Motion to Vacate (Docs. 164, 166), which was appealed in January 2020 (Doc. 168) and affirmed by the Eleventh Circuit on March 3, 2021 (Doc. 206). See *United States v. Hagler*, 838 F. App'x 507 (11th Cir. 2021), USCA11 Dkt. 20-10299. Second, the appeal of the Court's denial of Hagler's Motion for Emergency Reduction or Modification of Sentence (Docs. 185, 194), which was appealed in November 2020 (Doc. 197) and affirmed by the Eleventh Circuit on May 20, 2021 (Doc. 209). See *United States v. Hagler*, 849 F. App'x 248 (11th Cir. 2021), USCA11 Dkt. 20-14444.

6

respectively. (Doc. 226, PageID.1127). This left nearly five months for Hagler to submit a timely § 2255 motion prior to the October 13, 2021, AEDPA deadline. Moreover, just because the district court lacked jurisdiction to review the motion prior to May 20, 2021, does not mean Hagler was unable to prepare his motion in advance.

Hagler's reply re-characterizes his position: "The United States looked at when both decisions were handed down not when Hagler was made [aware] of the court ruling[s]." (Doc. 227, PageID.1132). Hagler asserts that due to transit delays, lockdowns and prison mailing procedures, he did not get "copies of the Court's ruling" until "late in Oct[ober] of 2021." (Doc. 227, PageID.1132).

It is true that "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely [petition]." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002) (citation omitted). However, "not in every case will a prisoner be entitled to equitable tolling until he receives notice;" rather, "each case turns on its own facts." *Knight*, 292 F.3d at 711.

In the present case, Hagler asserts he was delayed in learning of the Eleventh Circuit's decisions until late October 2021. (Doc. 227, PageID.1132). However, the record indicates Hagler knew at least one of his appeals had been finalized as early as April 26, 2021, when he filed a Petition for Rehearing En Banc.[8] (*See* USCA11,

---

[8] The record is unclear as to precisely what Hagler knew and when regarding his appeal(s). Hagler's April 26, 2021, Petition for Rehearing En Banc references "Appeal Number 20-14444." (*See* USCA11, Dkt. 20-14444). However, the Eleventh Circuit's decision on this appeal was not handed down for nearly another month. (*See* Doc. 209).

7

Dkt. 20-14444). Moreover, even if Hagler did not receive actual notice of his appellate decisions until late October 2021, he has failed to provide any evidence in support of a claim that he diligently attempted to ascertain the results during their pendency, which is "a burden necessary to sustaining his claim of extraordinary circumstances." *Drew*, 297 F.3d at 1288. Accordingly, Hagler's first argument in favor of tolling fails.

### 2. *Delay Due to COVID-19 Lockdowns*

Hagler next asserts his filing was delayed on account of COVID-19 lockdowns at FCI Oakdale and FCI Jesup. (Doc. 225, PageID.1113). At FCI Oakdale, where Hagler was located until March 2021 he states "he was on 23-hour lockdown with no law library" because of the pandemic. (Doc 225, PageID.1113). Moreover, Hagler asserts this lockdown "was not by any means routine," and describes the situation as resulting in "no access to phones, the law library, mail, copying, you could not even buy paper, and this went on for months." (Doc. 227, PageID.1133). Hagler also points to a hurricane and an ice storm during his time at FCI Oakdale resulting in lockdowns. (*Id.*). Hagler was moved to FCI Jesup in March 2021, where the law library was also locked down due to the pandemic. (Doc. 225, PageID.1113).

While prison lockdowns pose a hurdle for a federal prisoners seeking relief under § 2255, the Eleventh Circuit has made clear they are not "extraordinary circumstances" sufficient to warrant tolling. *See Akins v. United States*, 204 F.3d 1086, 1089-90 (tolling not warranted despite a 4-5 month lockdown and legal papers being misplaced by prison officials), *and Dodd*, 365 F.3d at 1282-83 ("lockdowns and

periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate" (citation omitted)).

Lockdowns on account of COVID-19 have been treated no differently. *See Powell v. United States*, 2022 WL 2811987, *1 (11th Cir. February 8, 2022) (unpublished) ("under [Eleventh Circuit] precedents, lockdowns and similar limitations imposed because of the COVID-19 pandemic [are] not extraordinary circumstances which by themselves justify equitable tolling"). *See also Franco v. United States*, 2021 WL 1546021, *n.5 (M.D. Fla. April 20, 2021) (collecting cases on COVID-19 lockdowns where tolling was not warranted), *and Crook v. United States*, 2022 WL 566781, *6 (N.D. Ala. February 24, 2022) (same). Several courts within the Eleventh Circuit have gone a step further, looking to a movant's particular circumstances as compared to other prisoners facing a COVID-19 lockdown. *See Rush v. Secretary, Florida Department of Corrections*, 2021 WL 3134763, *1 (11th Cir. June 22, 2021) (unpublished) (finding no extraordinary circumstances when "[movant's] circumstances were not different than any other prisoner attempting to access legal resources, as they were all subject to COVID-19 protocols"), *and Hilliard v. United States*, 2022 WL 165006, *1 (S.D. Ga. January 18, 2022) ("Delays due to COVID-19 are not extraordinary circumstances for the purpose of equitable tolling if a prisoner cannot demonstrate his circumstances are different than that of other prisoners" (citing *Rush*, 2021 WL 3134763 at *1)).

Read together, these cases indicate a movant must "demonstrate *unique* circumstances in *his* case apart from other prisoners that prevented *him* from filing

9

a timely habeas motion because of the COVID-19 pandemic." *Crook*, 2022 WL 566781 at *6 (emphasis in original). In the present case, Hagler has not done so. Access to the law library was not restricted solely for him – but for everyone. His circumstances were no more unique than those of any other prisoner seeking relief under § 2255 at these respective correctional facilities during the pandemic. As such, they are not extraordinary and do not entitle him to tolling.

### 3. *Delay Due to Transfers*

Coinciding with the COVID-19 lockdowns is Hagler's argument that "being stuck in transit," entitles him to tolling. (Doc. 225, PageID.1113). Hagler chronicles his movement among prisons stating he was at FCI Oakdale until March 2021, then was moved to FCI Jesup (but did not arrive until May 26, 2021), before being moved once more to FCI Coleman (and was in transit from March to June of 2022). (*Id*.).

The Eleventh Circuit has suggested prison transfers are not extraordinary circumstances for tolling purposes, at least absent a claim that it is "unconstitutional or somehow inappropriate, or … anything but a routine practice." *Dodd*, 365 F.3d at 1283. Rather, "institutional transfers ... are usual incidents of prison life." *See Wallace v. United States*, 981 F.Supp.2d 1160, 1165 (N.D. Ala. 2013) (compiling cases establishing extraordinary circumstances standard).

In the present case, while Hagler argues his "transfer between prisons was anything but routine practice," (Doc. 227, PageID.1134), it does not appear that they were – and they certainly were not unconstitutional or otherwise inappropriate. *Dodd*, 365 F.3d at 1283. Hagler points out that his transfers were subjected to

additional levels of quarantine, safety and security measures on account of the pandemic. (Doc. 227, PageID.1134). However, these additional precautionary steps do not place Hagler's situation outside the bounds of "routine practice." *See Powell*, 2022 WL 2811987 at *1 (finding routine prisons transfers during COVID-19 not to be extraordinary circumstance). Accordingly, the undersigned finds Hagler's transfers are not an extraordinary circumstance which entitle him to tolling.

4. *Delay Due to Discovery of Shaw v. United States*

The Court construes Hagler's third argument as an invocation of § 2255(f)(4) given the discussion of predicate facts, due diligence and the Seventh Circuit's opinion in *United States v. Shaw*. 39 F.4th 450 (7th Cir. 2022). (*See* Doc. 225, PageID.1113-14; Doc. 227, PageID.1134). Pursuant to § 2255(f)(4), AEDPA's one year limitation period begins on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Hagler states in his Response that "the clock doesn't start until the facts are discovered to support the claim," and notes "the fact that Hagler filed his 2255 [five] days after the *Shaw* case came out … shows true diligence on Hagler's part." (Doc. 225, PageID.1113-14). Additionally, in his underlying § 2255 motion, Hagler stated, "I am just now learning of the Tapia v. U.S. case [through] the new ruling [in] United States v. Shaw." (Doc. 220, PageID.1068). Construed liberally, Hagler appears to argue his AEDPA clock should not have started October 13, 2020, but rather July 6, 2022, when he first learned of the rule announced in *Tapia v. United States*, 564 U.S. 319 (2011), through its invocation in *Shaw*. *See generally*, 39 F.4th at 453-60.

11

The Supreme Court's decision in *Tapia* is certainly relevant to the underlying merits of Hagler's § 2255 motion. *See* 564 U.S. at 335 (holding courts may not impose or lengthen prison terms to promote an offender's rehabilitation). *See United States v. Vandergrift*, 754 F.3d 1303, 1309 (11th Cir. 2014) (adopting *Tapia* rule in the context of resentencing upon revocation of supervised release). However, it does not change the fact that Hagler's motion is plainly time-barred, and his recent discovery of the *Tapia* rule does not entitle him to equitable tolling.

For purposes of § 2255(f)(4), the discovery of "a judicial decision interpreting the law does not constitute a new fact…" *Ingram v. United States*, 932 F.3d 1084, 1089 (8th Cir. 2019) (citation and internal quotation omitted). Rather, "§ 2255(f)(4) is directed at the discovery of new facts, not newly-discovered law." *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2013). *See Madaio v. United States*, 397 F. App'x 568, 569-70 (11th Cir. 2010) (per curiam) ("Since Section 2255(f)(4) is predicated on the date that 'facts supporting the claim' could have been discovered, the discovery of a new court legal opinion, as opposed to new factual information affecting the claim, does not trigger the limitations period.").

Though Hagler recently discovered the *Tapia* rule by reading *Shaw*, the *Tapia* rule is not new. Moreover, its application to resentencing upon revocation of supervised release – as was the done in *Shaw* – has been the law in the Eleventh Circuit since 2014. *See Vandergrift*, 754 F.3d at 1909. In sum, Hagler's discovery of the *Shaw* case, and the principles articulated therein, do not constitute a "new" fact for purposes of his § 2255 motion. Moreover, Hagler's assertion that his discovery of

this case and its rule "also shows ineffective assistance by Hagler's counsel" does not establish entitlement to tolling. *See Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1227 ("attorney negligence, even gross or egregious negligence, does not by itself qualify as an extraordinary circumstance for purpose of tolling") (citation and internal quotations omitted). In sum, this discovery does not justify his assertion that his date of final decision should be July 6, 2022, rather than October 13, 2020, nor does it otherwise entitle him to equitable tolling.

5. *Delay Due to Lack of Case File*

Hagler further asserts he was delayed in filing his motion because "his public defender (*sic*.) refused to turn over his case file preventing him from filing a habeas petition" and points the Court to *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014). (Doc. 225, PageID.1114). Hagler's argument on this point is bare, conclusory and not supported by any facts, materials or documentation apart from his citation to *Socha*, (*See id.*). Hagler's reply adds no substantive justification. (Doc. 227, PageID.1135).

As an initial note, *Socha* is not binding authority on this Court. *See Commodores Entertainment Corporation v. McClary*, 879 F.3d 1114, 1133 (11th Cir. 2018) (explaining Eleventh Circuit is not bound the decisions of other circuit courts). Moreover, Hagler's circumstances are not akin to inmate Socha's. The Seventh Circuit determined Socha was entitled to equitable tolling, but also noted that his circumstances were "rare." 763 F.3d at 688. Socha began seeking his case file prior to his conviction becoming final, but it was not provided to him until 40 days before his AEDPA deadline. *Id*. at 679-80. Throughout this period, Socha sent at least five

13

letters to his former counsel seeking his case file, two letters to his former counsel's boss, and even enlisted the help of a fellow inmate to request the records directly from the local county circuit clerk. *Id*. When Socha's case file finally arrived, he was in administrative segregation with limited access to a law library, and the *Socha* Court observed it "would have been nearly impossible for [him] to review the disorganized file, gather background legal materials, and craft a meaningful petition before the deadline" given his limited access. *Id*. at 686. Facing these obstacles and a fast-approaching deadline, Socha even petitioned the court for an extension to file – which was granted – and subsequently, he complied with the extended deadline. *Id*.

While inmate Socha sought his case file without success for nearly a year, Hagler's record does not indicate any similar attempts. Hagler has not provided the Court with any evidence to show his case file was wrongfully withheld, nor has he pointed to any efforts made to obtain it or even shown that he asked for it. Moreover, while the *Socha* Court noted "it is unclear what more Socha could have done without access to his file," 763 F.3d at 686, Hagler was able to file numerous detailed pleadings with the Court despite lacking his case file during his one-year period. (*See* Docs. 191, 193, 196, 197, 200, 202, 204). In sum, Hagler's bare allegation that his public defender refused to provide his case file is insufficient to warrant tolling.

6. *Delay Due to Illness*

Hagler also requests the Court take his medical condition(s) into consideration. (Doc. 225, PageID.1114). Hagler states his conditions are such that "he can not live as someone in good health [and] he has to have help with daily things." (*Id*.). Hagler

does not detail his medical conditions in his Response to the Court's show cause order (*id.*), nor in the underlying petition (Doc. 220). However, the record reveals several conditions affecting Hagler – among them, throat cancer, bipolar disorder, COPD, asthma, hypertension, seizure disorder and degenerative lumbar disk disease. (*See* Docs. 185, 185-1).

While a medical condition may constitute extraordinary circumstances for purposes of tolling, the Eleventh Circuit has held that any condition(s) must be "sufficiently debilitating." *Lang v. Alabama*, 179 F. App'x 650, 652 (11th Cir. 2006) (per curiam). This means the condition's severity is "such that it prevented [petitioner] from taking some action to pursue the timely filing." *Id. See Lawrence v. Florida,* 421 F.3d 1221, 1226-27 (11th Cir. 2005) (finding tolling not warranted unless causal connection is demonstrated between mental incapacity and ability to timely file a petition). *See also Mazola v. United States*, 294 F. App'x 480, 482 (11th Cir. 2008) (affirming district court's finding that tolling is warranted when inmate is hospitalized). In the present case, Hagler has not demonstrated nor explained how his condition(s) are sufficiently debilitating such that they prevented him from timely filing his § 2255 motion. Therefore, Hagler fails to establish he is entitled to tolling on the basis of his medical condition(s).

**b. Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rule 11(a) of the Rules Governing § 2255 Proceedings. "Unless a circuit justice or judge issues a

certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quotations omitted). However, "a COA does not require a showing that the appeal will succeed." *Id.* at 337.

Upon due consideration, the undersigned **RECOMMENDS** Hagler be **DENIED** a Certificate of Appealability in conjunction with the denial of his present § 2255 motion, as reasonable jurists would not debate whether his § 2255 motion should be resolved in a different manner or that any of the issues presented is adequate to deserve encouragement to proceed further.[9]

### c. Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3).

> A party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross,* 984 F.2d 392, 393

---

[9] If the Court adopts the undersigned's recommendation to decline to issue a COA, he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2255 Cases in the United States District Courts.

(11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." *Bilal v. Driver,* 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester,* 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n,* 936 F.2d 512, 515 (11th Cir. 1991).

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859-60 (11th Cir. 2008) (per curiam) (unpublished). Having considered the issues raised as set forth above, the undersigned **RECOMMENDS** the Court **CERTIFY** that any appeal by Hagler of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.[10]

## IV. Conclusion

As set out above, the undersigned **RECOMMENDS** Hagler's § 2255 motion be **DENIED** and **DISMISSED with prejudice** as time-bared from consideration on collateral review. Further, the undersigned **RECOMMENDS** Hagler be **DENIED** a Certificate of Appealability and that the Court **CERTIFY** any appeal by Hagler of the denial of the present § 2255 motion would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal *in forma pauperis*.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2255 Cases in the United States District Courts; S.D. Ala.

---

[10] Hagler may file a motion to proceed on appeal *in forma pauperis* with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 18th day of October 2022.

*/s/ Katherine P. Nelson*
Katherine P. Nelson
United States Magistrate Judge